IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| ERICH GOELDNER, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | No. 4:19-cv-00692-NKL |
|  | ) |  |
| UNION PACIFIC RAILROAD COMPANY, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

**ORDER**

Plaintiff's complaint alleges four claims under the Americans with Disabilities Act (ADA), 42 U.S.C. 12101 *et seq.*: disparate treatment, disparate impact, unlawful medical inquiries, and failure to accommodate.[1] Doc. 1 (Complaint). Plaintiff's claims arise from Defendant's determination under its internal medical policy that Plaintiff was unfit to return to work following shoulder surgery. Pending before the Court are Defendant Union Pacific's motion to dismiss, Doc. 8, and Plaintiff Erich Goeldner's motion to amend the complaint, Doc. 29. For the reasons set forth below, Plaintiff's motion to amend is GRANTED and Defendant's motion to dismiss is DENIED.

**I.     Alleged Facts**

Goeldner began working at Union Pacific as a brakeman/conductor in January 2006. Doc. 1, ¶ 2. On August 21, 2016, Goeldner dislocated his left shoulder while on duty as a brakeman as a result of his backpack slipping from his shoulder while exiting a locomotive. *Id.*, ¶¶ 29–31.

---

1.     Union Pacific challenges Goeldner's claim for failure to accommodate, arguing that Goeldner did not exhaust his administrative remedies and failed to sufficiently plead this claim. In his response brief on this issue, Goeldner states that he "withdraws Count IV for failure to accommodate and consents to its dismissal without prejudice." Doc. 20, at 5 n.1. The Court in this order dismisses Goeldner's Count IV for failure to accommodate without prejudice, and therefore need not address this claim on the merits.

Goeldner was taken to a hospital, "but was ultimately able to pop his shoulder back into place without medical intervention." *Id.*, ¶ 32. Following this injury, Goeldner was diagnosed with a shoulder labral tear which was surgically repaired on September 21, 2016. *Id.*, ¶¶ 34–35. On December 27, 2016, Goeldner's physician released him to return to work without restrictions. *Id.*, ¶ 36, Doc. 1-5 (Plaintiff's Charge of Discrimination to the EEOC).

Following his shoulder surgery, Union Pacific did not allow Goeldner to return to work. *Id.*, ¶ 37. Instead, on February 16, 2017, Union Pacific issued a Memo on Fitness for Duty Determination which stated that Goeldner was "unfit to continue working as a brakeman/conductor" and "imposed significant permanent restrictions" on his ability to work for Union Pacific. *Id.*, ¶¶ 38, 42. In a letter dated August 8, 2017, Union Pacific informed Goeldner that a third-party doctor review of his case as requested by his union was not warranted, and his current work restrictions remain in place. *Id.*, ¶ 46; Doc 1-4.

Goeldner has not returned to work at Union Pacific, and on December 19, 2017 he filed a charge of discrimination with the EEOC alleging that Union Pacific discriminated against him on the basis of age and disability. *Id.*, ¶¶ 49–50, Doc. 1-5. On June 10, 2019, the EEOC issued Goeldner a right to sue letter. *Id.*, ¶ 50, Doc. 1-6. Goeldner then filed this action on August 30, 2019 alleging disparate treatment, disparate impact, unlawful medical inquiries, and failure to accommodate under the ADA, 42 U.S.C. 12101 *et seq*. Doc. 1. A parallel class action brought against Union Pacific asserting similar ADA claims of disparate treatment, disparate impact, and unlawful medical inquiries based on the same policy of requiring fitness for duty assessments and determinations was filed on November 25, 2015. The court in that case granted class certification for the class of "[a]ll individuals who have been or will be subject to a fitness-for-duty examination as a result of a reportable health event at any time from September 18, 2014 until the final

resolution of this action." *Harris v. Union Pac. R.R. Co.*, 329 F.R.D. 616, 628 (D. Neb. 2019). On February 27, 2019, Union Pacific appealed the class certification. Goeldner asserts that he qualifies as a member of the *Harris* class, and has opted-out of that class to file his individual claims through this action. Doc. 20, at 7, 11.

## II. Discussion

### A. Amending Complaint by Interlineation

The Court first addresses Goeldner's motion to amend the complaint by interlineation, Doc. 29. Federal Rule of Civil Procedure 15(a) provides that a request for leave to amend a complaint "shall be freely given when justice so requires." Construing this Rule, the Supreme Court has held that "[i]n the absence of . . . undue delay, bad faith or dilatory motive . . . , repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . [or] futility of amendment, etc.," leave should indeed by freely given. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

In pleading his claim for disparate treatment, Goeldner's complaint cites as the applicable standard 42 U.S.C. § 12112(b)(6), a subsection of the ADA used in asserting claims for disparate impact. Doc. 1, at ¶ 59. Goeldner acknowledges that this was a mistaken reference and moves to amend this paragraph in his complaint by interlineation to substitute reference to the applicable section for pleading a claim of disparate treatment, 42 U.S.C. § 12112(b)(1). Union Pacific opposes this motion on the grounds that even if the proposed amendment was granted, Goeldner's claim would still fail to withstand a motion to dismiss as his claim would still be time-barred.

As this Court finds that Goeldner's claims are not time-barred, an amendment would not be rendered futile due to Union Pacific's asserted statute of limitations defense. Goeldner timely filed this motion to amend in advance of the deadline set by the Scheduling Order, Doc. 21, and

3

there is no assertion that this amendment would cause any undue delay or prejudice. Accordingly, in the interest of justice, and so Goeldner can clearly state and test his claim of disparate treatment on the merits, Goeldner's motion to amend, Doc. 29, is granted. Paragraph 59 of Plaintiff's Complaint, Doc. 1, is amended by interlineation to state as follows:

> Discriminating against a qualified individual on the basis of disability includes "limiting, segregating, or classifying a job applicant or employee in a way that adversely affects the opportunities or status of such applicant or employee because of the disability of such applicant or employee." 42 U.S.C. § 12112(b)(1).

### B. Exhaustion of Administrative Remedies

Prior to bringing a claim of discrimination under the ADA in court, a plaintiff must first exhaust her administrative remedies by timely filing a charge of discrimination with the EEOC within 300 days of the alleged unlawful employment practice. 42 U.S.C. § 12117(a) (incorporating Title VII's enforcement provisions in 42 U.S.C. § 2000e-5 to the ADA). "Exhaustion of administrative remedies is central to Title VII's statutory scheme because it provides the EEOC the first opportunity to investigate discriminatory practices and enables it to perform its roles of obtaining voluntary compliance and promoting conciliatory efforts." *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 222 (8th Cir. 1994).

Union Pacific asserts that Goeldner's disparate treatment claim is time-barred and substantively flawed, that he did not exhaust his administrative remedies for his disparate impact claim,[2] and that he neither exhausted his administrative remedies nor stated a claim for which relief can be granted for his claim of unlawful medical inquiries. Doc. 8. Specifically, Union Pacific argues that Goeldner's charge of discrimination with the EEOC was filed after the statute of

---

2. Union Pacific states in its motion to dismiss that "Goeldner has not pleaded facts plausibly suggesting his entitlement to relief under the ADA, as to Counts II, III, and IV, as required to state a claim," Doc. 8, at 2, but did not provide argument in its briefing regarding whether Goeldner's Count II, disparate impact, states a claim for relief.

4

limitations for him to do so expired, and his claims are now time-barred.

Goeldner filed his EEOC charge on December 19, 2017. Defendant argues that the last adverse employment action taken against Goeldner occurred on February 16, 2017 when Union Pacific imposed permanent work restrictions on Goeldner. If this date controls, which the Court will assume for the purposes of this motion, Goeldner's charge of discrimination was filed 306 days after the last unlawful employment action. Unless this limitations period was tolled, Goeldner's ADA claims would be time-barred for failure to file a charge with the EEOC within the 300-day statute of limitations.

### 1. Class Action Tolling Under *American Pipe*

The first issue to address is whether Goeldner's claims are tolled under the principles set forth by the Supreme Court in *American Pipe*. Under *American Pipe*, the timely filing of a class action tolls the applicable statute of limitations for putative class members. *Am. Pipe & Const. Co.*, 414 U.S. 538, 554 (1974). This tolling of plaintiff's claims begins at "the commencement of a class action" and "suspends the applicable statute of limitations as to all *asserted* members of the class who would have been parties had the suit been permitted to continue as a class action." *Id.* at 554 (1974) (emphasis added). "Once the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied." *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 354 (1983).

Goeldner argues that his claims are not time-barred because the statute of limitations for filing his charge of discrimination with the EEOC was tolled because he was a member of the putative class action in *Harris v. Union Pacific Railroad Co.*, and he therefore timely filed his charge with the EEOC as necessary to exhaust his administrative remedies prior to bringing this suit. *See Harris v. Union Pac. R.R. Co.*, 329 F.R.D. 616 (D. Neb. 2019). Union Pacific argues that

Goeldner is not a member of the *Harris* class because the certified class consists of "[a]ll individuals who have been or will be subject to a fitness-for-duty examination as a result of a reportable health event at any time from September 18, 2014 until the final resolution of this action." *Harris v. Union Pac. R.R. Co.*, 329 F.R.D. 616, 628 (D. Neb. 2019). According to Union Pacific, the term "reportable health event" as used in the class certification order is derived from the company's reportable health events policy, and only applies to certain medical conditions, and not to Goeldner's shoulder dislocation and surgery. Doc. 1-2 (Union Pacific's Medical Rules), at 11–12. Alternatively, Union Pacific argues that even if Goeldner is a member of the *Harris* class, tolling should not apply because *American Pipe* tolling only applies if class certification is denied.

To determine whether Goeldner is a member of the "*Harris* class" for the purposes of tolling, the Court must look to the class action complaint filed in the *Harris* case, not the class actually certified. *American Pipe*, 414 U.S. at 554 (1974) ("We are convinced that the rule most consistent with federal class action procedure must be that the commencement of a class action suspends the applicable statute of limitations as to all *asserted* members of the class who would have been parties had the suit been permitted to continue as a class action.") (emphasis added). In the *Harris* complaint the class members are defined as:

> Individuals who were removed from service over their objection, and/or suffered another adverse employment action, during their employment with Union Pacific for reasons related to a Fitness-for-Duty evaluation at any time from 300 days before the earliest date that a named Plaintiff filed an administrative charge of discrimination to the resolution of this action.

Amended Complaint at 17, *Harris v. Union Pac. R.R. Co.*, No. 2:15-CV-01865-JCC (D. Neb. Feb. 19, 2016), ECF No. 20. Goeldner's permanent work restrictions following a Fitness-for-Duty evaluation at Union Pacific qualify him as a member of the putative class action as asserted in the complaint in *Harris*.

As for Union Pacific's alternative argument that *American Pipe* tolling only applies if class

certification is denied, the Court finds the Defendant's authority unpersuasive. The two cases cited by the defendants are *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800 (2018) and *Weitzner v. Sanofi Pasteur, Inc.*, 909 F.3d 604, 609 (3rd Cir. 2018) and both these cases deal with successive class actions, not individual claims filed by class members after a class action is filed.

Courts that have dealt with class members filing an individual claim after a class action is filed have found that *American Pipe* tolling applies even if class certification is granted. The Eighth Circuit held in *Zarecor v. Morgan Keegan & Co.* that "whether a plaintiff's participation in a class action ends with a decision to opt out rather than with denial of class certification 'is irrelevant to the applicability of the *American Pipe* rule.'" 801 F.3d 882, 888 (8th Cir. 2015) (quoting *Adams Pub. Sch. Dist. v. Asbestos Corp.*, 7 F.3d 717, 718 n.1 (8th Cir.1993); *accord Grispino v. New England Mut. Life Ins. Co.*, 358 F.3d 16, 19 (1st Cir. 2004) (noting that there is "a consistent line of federal circuit court cases holding that the *American Pipe* tolling doctrine applies to plaintiffs who opt out of a class action in federal district court"); *Realmonte v. Reeves*, 169 F.3d 1280, 1284 (10th Cir. 1999) ("that [plaintiffs'] participation in the class action terminated with a decision to opt out of a certified class rather than with the denial of class certification is irrelevant to the applicability of the *American Pipe* tolling rule"); *Tosti v. City of Los Angeles*, 754 F.2d 1485, 1488 (9th Cir. 1985) ("when certification has been granted, the statute [of limitations] begins running anew from the date when the class member exercises the right to opt out"); *Santiago v. Fischer*, No. 09-CV-1383-MKBST, 2017 WL 4349378, at *6 (E.D.N.Y. Sept. 29, 2017) (holding that tolling under *American Pipe* can extend beyond class certification).

The goal of *American Pipe* tolling is to preserve "litigative efficiency and economy" by preventing each potential class member from being induced to file individual suits or motions to intervene for fear that reliance on only a separate putative class action may result in their claims

7

being barred. *American Pipe*, 414 U.S. at 554. Equitably tolling Goeldner's claims would not frustrate the goal of requiring parties to operate within the statute of limitations, as the intended purpose of statutes of limitations are to "put defendants on notice of adverse claims and to prevent plaintiffs from sleeping on their rights, but these ends are met when a class action is commenced." *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 352 (1983) (citations omitted). Union Pacific has been appropriately notified by the class action complaint and is acutely aware of Goeldner's claims given the discovery and litigation in the related *Harris* class action.[3]

**2. Scope of EEOC Charge**

While the parties do not dispute that Goeldner's charge of discrimination to the EEOC alleged a claim of disparate treatment, Union Pacific argues that the charge, even if timely filed, did not allege claims of disparate impact or unlawful medical inquiries, and that Counts II and III should therefore be dismissed for failure to exhaust administrative remedies. Goeldner contends that his charge filed with the EEOC was stated broadly enough to cover both of these claims, and he therefore exhausted his administrative remedies prior to filing this suit.

"While a charge of discrimination 'need not specifically articulate the precise claim, it must nevertheless be sufficient to give the employer notice of the subject matter of the charge and identify generally the basis for a claim.'" *Malone v. Ameren UE*, 646 F.3d 512, 516 (8th Cir. 2011) (quoting *Humphries v. Pulaski Cnty. Special Sch. Dist.*, 580 F.3d 688, 697 (8th Cir. 2009)). "To determine whether an allegedly discriminatory action falls within the scope of a claim, the administrative complaint must be construed liberally in order to further the remedial purposes of

---

3. As for Union Pacific's argument that it would be inequitable to give Goeldner the protection of equitable tolling when he has not opted out of the class action, there is an insufficient record to support that argument. Further, even if he has not opted out, there are more equitable ways to address that concern than to deny his individual claims when, if Union Pacific is correct, he is not even an actual member of the class initially certified.

8

applicable legislation." *Dorsey v. Pinnacle Automation Co.*, 278 F.3d 830, 838 (8th Cir. 2002) (citing *Cobb v. Stringer*, 850 F.2d 356, 359 (8th Cir. 1988)). In determining whether a claim asserted in a complaint falls within the scope of the charge filed, it is understood that the civil suit may only include claims "as broad as the scope of the EEOC investigation which reasonably could be expected to result from the administrative charge." *Kirklin v. Joshen Paper & Packaging of Arkansas Co.*, 911 F.3d 530, 536 (8th Cir. 2018) (quoting *Shelton v. Boeing Co.*, 399 F.3d 909, 912 (8th Cir. 2005)).

Goeldner's charge to the EEOC stated, in relevant part, that he sustained an on-the-job injury, he received medical attention, he was released by his doctor to return to work without restrictions, that "the company's medical officer did a fitness for duty assessment," that the company's doctor imposed permanent work restrictions against him preventing him from returning to his previous position, that he "submitted to a functional capacity exam," that he was "advised that [he] needed to request a conference between [his] doctor and the company's medical officer," and that he was then informed that there would be no further medical review and his work restrictions would remain in place. Goeldner ended section specifying the particulars of his case noting that he believed he "was discriminated against because of [his] age . . . and because [he] was regarded as disabled . . . ." Doc. 1-5.

Unlike claims of disparate treatment where "discriminatory motive is critical," disparate impact claims are distinguishable for involving "employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." *International Broth. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977); *see also Brown v. Ameriprise Fin. Servs. Inc.*, 707 F. Supp. 2d 971, 976 (D. Minn. 2010) ("disparate treatment involves *intentional* discrimination against an

9

individual (or group of individuals), while disparate impact involves *unintentional* discrimination.") (citations omitted). Goeldner's charge did not specifically assert that an individual acted with intent to discriminate against him, but stated that "he was regarded as disabled." Doc. 1-5, at 1. Goeldner identified that following being cleared by his physician, he was subject to a fitness for duty assessment and a functional capacity exam. *Id.* This statement leaves open the possibility that a neutral company policy had resulted in his unfairly being regarded as disabled. Goeldner did not narrow his claim t just intentional discrimination. Addressing the broad language used by Goeldner, it is reasonable that an investigation conducted by the EEOC would review both the possibility of a disparate treatment claim and a related ancillary disparate impact claim. Once the EEOC investigated the case and found that Goeldner did not meet Union Pacific's medical standards but had met outside medical standards, it would be natural for the EEOC to question the business justification for these medical assessments and the possibility of a disparate impact claim stemming from a facially neutral employment policy which could disproportionately bar individuals with disabilities from being able to work. Similarly, while evaluating the appropriateness of Union Pacific's medical policies generally, the fact that Union Pacific requires its employees to supply their medical records which could divulge their injuries and disabilities to be used against the employees would have been an expected offshoot of the EEOC's investigation. Goeldner's charge of discrimination provided the necessary procedures and policies in effect at Union Pacific for the EEOC to have been put on notice of not only a direct disparate treatment claim against Goeldner, but of related claims for disparate-impact and unlawful medical inquiries.

Because this Court finds that Goeldner's claims for disparate impact and unlawful medical inquiries were within the scope of the charge filed with the EEOC, the Court need not address Goeldner's argument that his claims were administratively exhausted due to the properly filed

charges of others through the single filing rule.

### C. Failure to State a Claim

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim has facial plausibility when its allegations rise above being "speculative" or "conceivable," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007), and where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Such a complaint will be liberally construed in the light most favorable to the plaintiff. *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

#### 1. Count I – Disparate Treatment

To establish a prima facie case of discrimination under the ADA, Goeldner must demonstrate that "(1) he is a disabled person as defined by the ADA, (2) he is qualified to perform the essential functions of his job with or without reasonable accommodation, and (3) he suffered an adverse employment action because of his disability." *Higgins v. Union Pac. R.R. Co.*, 931 F.3d 664, 669 (8th Cir. 2019) (citation omitted).

Goeldner alleges that he a qualified individual with a disability under the ADA; that he maintains the requisite skill, experience, education, and other job-related requirements of his positions; and that he was capable of performing the essential functions of his brakeman/conductor position. Doc. 1, at ¶¶ 55–57. The ADA makes it unlawful for an employer to discriminate against any "qualified individual on the basis of disability." 42 U.S.C. § 12112(a); *Hill v. Walker*, 737

F.3d 1209, 1216 (8th Cir. 2013). Discriminating on the basis of a disability includes "limiting, segregating, or classifying a job applicant or employee in a way that adversely affects the opportunities or status of such applicant or employee because of the disability of such applicant or employee." 42 U.S.C. § 12112(b)(1). The burden of establishing a prima facie case of disparate treatment is not onerous. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

Union Pacific argues that Goeldner's claim for disparate treatment should be dismissed for failure to state a claim as the section of the complaint pleading this claim made reference to a section of the ADA used when asserting a claim of disparate impact, 42 U.S.C. § 12112(b)(6). As the Court has already granted Plaintiff's motion to amend this paragraph by interlineation, and given that the amended paragraph now asserts an appropriate reference for pleading a claim of disparate treatment, Union Pacific's argument is now moot. Goeldner alleges that Union Pacific discriminated against him on the basis of his disability by issuing permanent work restrictions on him preventing him from working, despite his ability to perform the essential functions of his work. Doc. 1, at ¶¶ 41, 55–61. The factual allegations in Goeldner's complaint are sufficient to draw an inference that Union Pacific would be liable for claim of disparate treatment.

2. **Count II – Disparate Impact**

The ADA additionally makes it unlawful for a covered employer to discriminate on the basis of disability through "utilizing standards, criteria, or methods of administration . . . that have the effect of discrimination on the basis of disability." 42 U.S.C. 12112(b)(3). Goeldner alleges that Union Pacific's fitness for duty policies and practices "disproportionally—and adversely— impact qualified individuals with disabilities." Doc. 1, at ¶ 68. Goeldner further alleges that Union Pacific "routinely issue Fitness for Duty determinations that disqualify employees from their positions on the basis of their abilities, even though the disabilities do not affect the employees'

12

ability to perform the essential functions of their job" and that Union Pacific cannot show that the policies and standards they employ are "job-related and consistent with business necessity." Doc. 1, at ¶¶ 17, 70. Union Pacific challenges the sufficiency of the pleading of this claim, but provides no support for this argument in its briefing. Given Goeldner's allegations that he was denied the ability to return to his position despite being able to work in that position, in construing the allegations in the light most favorable to plaintiff, it is possible to draw a reasonable inference that Union Pacific would be liable for a claim of disparate impact.

### 3. Count III – Unlawful Medical Inquiry

Under the ADA, employers are generally prohibited from requiring current employees to undergo medical examinations or inquiries unless the employer can demonstrate they are "job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4). To survive a motion to dismiss, Plaintiff must plead that (1) he was an employee of Defendant, and (2) that Defendant required a medical examination or made a disability-related inquiry of him. Under the ADA, a medical inquiry is improper if it "may tend to reveal a disability." *Krehbiel v. Union Pac. R.R. Co.*, No. 2:19-CV-02002-JAR-JPO, 2019 WL 3387049, at *5 (D. Kan. July 26, 2019). A plaintiff must also show that the alleged violation of the ADA caused a tangible injury. *Hustvet v. Allina Health Sys.*, 910 F.3d 399, 406 (8th Cir. 2018).

Goeldner alleges in his complaint that while an employee of Union Pacific, the company had a policy of reviewing the medical status of employees who had certain changes in their health status. Doc. 1, at ¶8–11. These internal policies adhered to standard protocols and allegedly resulted in in improper and broad requests for medical records that were used to impose work restrictions on employees on the basis of their disabilities. *Id.*, at ¶¶ 12–23, 74–75. Goeldner asserts

that the medical inquiries were not job-related or consistent with business necessity, and that he was otherwise cleared to work without restriction. *Id.*, at ¶ 36, 76.

Goeldner states that he was given permanent work restrictions following one such review of his medical records, and alleges that as a result of this improper disability-related inquiry he was prevented from being able to perform his job and that he continues to suffer loss of income, emotional distress, and other damages. *Id.*, at ¶¶ 38, 41, 43, 77. Construing the alleged facts in the light most favorable to Goeldner, the complaint alleges sufficient factual allegations to plausibly state a claim for unlawful medical inquiries.

### III. Conclusion

For the reasons set forth above, Plaintiff's Count IV, failure to accommodate, is DISMISSED without prejudice; Plaintiff's motion to amend complaint, Doc. 29, is GRANTED; and Defendant's motion to dismiss, Doc. 8, is DENIED.

/s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: March 9, 2020
Jefferson City, Missouri